## CLAIBORNE-ANNAPOLIS FERRY CO. *v.* UNITED STATES ET AL.

No. 454. Argued February 18, 1932.—Decided April 11, 1932.

*Messrs. Philip B. Perlman* and *Jesse I. Miller,* with whom *Mr. George E. Edelin* was on the brief, for appellant.

*Assistant to the Attorney General O'Brian,* with whom *Solicitor General Thacher* and *Messrs. Charles H. Weston, Hammond E. Chaffetz, Daniel W. Knowlton,* and *Nelson Thomas* were on the brief, for the United States and Interstate Commerce Commission, appellees.

*Mr. Jonathan C. Gibson,* with whom *Mr. George E. Holmes* was on the brief, for the Chesapeake Beach Railway Co., appellee.

*Messrs. William Preston Lane, Jr.,* Attorney General of Maryland, *G. C. A. Anderson,* Assistant Attorney General, and *Willis R. Jones,* Deputy Attorney General, by leave of Court, filed a brief on behalf of the State of Maryland, as *amicus curiae.*

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

The Chesapeake Beach Railway Company, incorporated under Maryland laws and carrier by railroad subject to the Interstate Commerce Act, operates a line twenty-nine miles long which commences in the District of Columbia and passes southeastward through Maryland to Chesapeake Beach, twenty miles south of Annapolis. Connec-

tions are made and freight interchanged with the Baltimore & Ohio and Pennsylvania railroads. The charter empowers it to build and operate a railroad, etc., to construct docks, piers, bridges and retaining walls along the bay shore and to " own and employ steamboats or other vessels to connect the said railroad or railroads with other points by water communication."

December 26, 1929, proceeding under § 1, pars. 18, 19, 20, Interstate Commerce Act, as amended by Transportation Act, 1920, 49 U. S. C., the Railway Company petitioned the Interstate Commerce Commission to grant a certificate declaring " that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation," of the proposed addition or extension to its line. It stated the purpose " to establish and operate, either directly or through a wholly owned subsidiary, a ferry for the transportation of passengers and property between the terminus of its said line at Chesapeake Beach, across Chesapeake Bay [16 miles], and a point on Trippe's Bay in Dorchester County, Maryland." And it averred that " the present and future public convenience and necessity require the establishment of the proposed ferry so as to afford a direct route by rail and water between the City of Washington and surrounding territory and the eastern shore of Maryland and also to provide a direct route for the transportation of automobiles and other vehicles between such points."

Notice was given to the Governor of Maryland; publication followed; all as required by the statute.

The Claiborne-Annapolis Ferry Company (appellant), Maryland corporation, which operates a ferry from Annapolis across Chesapeake Bay, intervened and opposed the Railway's application " for the reason that the ferry service proposed to be operated by the applicant from

Chesapeake Beach, Calvert County, Maryland, to a point
on Trippe's Bay in Dorchester County, Maryland, will in-
terfere with and hamper the efforts of your petitioner to
give adequate service on its present route "—twenty miles
further north. It denied that present and future public
convenience and necessity require establishment of the
proposed ferry. No other party asked to intervene or
offered objection to the requested certificate

The Commission took evidence, heard the parties, made
a report, and, August 1, 1930, certified " that the present
and future public convenience and necessity require the
establishment by the Chesapeake Beach Railway Com-
pany of ferry service across Chesapeake Bay, in Calvert
and Dorchester Counties, Md., as set forth in the applica-
tion and said report."

The Ferry Company asked modification of the report,
order and certificate " in such manner as the Commission
may deem best to remove any doubt that the permission
granted the applicant is only for an extension of railroad
and not for the establishment of a general ferry service."
Among other things, the petition therefor stated: " Your
petitioner does not question the authority or the wisdom
of this Honorable Commission in granting to the applicant
a Certificate of Public Convenience and Necessity if the
Commission construes the application of the Chesapeake
Beach Railway Company in this case to be an application
for a certificate authorizing an extension of its railroad.
That, although the jurisdiction of this Honorable Commis-
sion in this case is limited in law to the grant of authority
to the applicant to extend its line of railroad across the
Chesapeake Bay by means of vessels, the Report, Order
and Certificate filed in this case on their face would seem
to indicate that the Commission has attempted to grant
to the applicant authority to operate a general ferry across
the Chesapeake Bay between the points known as Chesa-

peake Beach, Calvert County, Maryland, and Trippe's Bay, Dorchester County, Maryland. While your petitioner does not suggest that this Honorable Commission has granted or attempted to grant to the applicant such a certificate, which could be granted only by the State of Maryland, yet the use of the language by the Commission as follows: ' It is hereby certified, That the present and future public convenience and necessity require the establishment by the Chesapeake Beach Railway Company of ferry service across Chesapeake Bay, in Calvert and Dorchester Counties, Md., as set forth in the application and said report ' is, we most respectfully submit, misleading and confusing." The request was denied October 13, 1930.

December 24, 1930, appellant here, as sole complainant, filed an original bill in the Supreme Court, District of Columbia, against the Chesapeake Beach Railway Company and all members of the Interstate Commerce Commission, individually and as members thereof. Subsequently, the United States were made parties defendant. No others asked to come in or were added. After stating complainant's business, and that the Interstate Commerce Commission had granted the above described certificate of public convenience and necessity, the bill alleged that the order and certificate were null and without effect because the evidence before the Commission showed the carrier lacked corporate power to operate the ferry and had no actual use therefor in connection with its road; also, that no present or future public necessity and convenience required such operation. The prayer asked an injunction prohibiting the proposed construction, maintenance and operation, pursuant to the order of August 1, 1930, and "that it be adjudged, ordered and decreed that the said order of the Interstate Commerce Commission of August 1, 1930, be set aside and annulled and held for naught." Also, for general relief.

The proceedings before the Interstate Commerce Commission, the evidence presented there and its action were presented to the court. The cause was heard at a special session held by one judge of the Court of Appeals and two judges of the Supreme Court. A final decree dismissed the bill and the cause is here upon direct appeal. 38 Stat. 208, 220, U. S. C., Title 28, § 345.

Section 1, par. 3, Interstate Commerce Act, as amended by Transportation Act, 1920, provides that the term " railroad " as used in the Act, shall include all bridges, car. floats, lighters, and ferries used by or operated in connection with any railroad. Paragraph 18 prohibits carriers from extending their lines, or constructing new ones, " unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line of railroad." Paragraph 19 prescribes the procedure in respect of applications for such certificates. Paragraph 20,—" from and after issuance of such certificate, and not before, the carrier by railroad may, without securing approval other than such certificate, comply with the terms and conditions contained in or attached to the issuance of such certificate and proceed with the construction, operation, or abandonment covered thereby. Any construction, operation or abandonment contrary to the provisions of this paragraph or of paragraph (18) or (19) of this section may be enjoined by any court of competent jurisdiction at the suit of the United States, the Commission, any commission or regulating body of the State or States affected, or any party in interest; and any carrier which, or any director, officer, receiver, operating trustee, lessee, agent, or person, acting for or employed by such carrier, who knowingly authorizes, consents. to, or permits any violation of the provisions of this paragraph or of paragraph (18) of this

section, shall upon conviction thereof be punished by a fine of not more than $5,000 or by imprisonment for not more than three years, or both." Chap. 91, 41 Stat. 474, 477, 478; U. S. C. A., Title 49, § 1.

Sections 18, 19, and 20 were added to the Act to Regulate Interstate Commerce by the Transportation Act, 1920. They are restricted to carriers engaged in transporting persons or property in interstate and foreign commerce and were intended to affect intrastate commerce only as that may be incidental to the effective regulation of interstate commerce. *Texas* v. *Eastern Texas R. Co.,* 258 U. S. 204, 213, 217.

Considering *Texas* v. *Eastern R. Co., supra, Colorado* v. *United States,* 271 U. S. 153, *Western Pacific California R. Co.* v. *Southern Pacific Co.,* 284 U. S. 47, and *Transit Commission* v. *United States,* 284 U. S. 360, it must be held that appellant is a "party in interest" within the meaning of the statute capable of instituting the present proceeding. The bill disclosed that the proposed and permitted action might directly and adversely affect its welfare by changing the transportation situation. The cause is one of the class to be tried by a specially constituted district court, under the Urgent Deficiencies Act, Oct. 22, 1913, c. 32, 38 Stat. 208, 220 (U. S. C., Title 28, § 47).

U. S. Code, Title 28, § 46 (Jud. Code, § 208) provides that suits to enjoin, set aside, annul, or suspend any order of the Interstate Commerce Commission shall be brought in the district court against the United States, &c. Section 47 directs that they shall be heard before three judges, at least one of whom must be a circuit judge.

It has been suggested that the Supreme Court of the District of Columbia cannot be regarded as a district court, and judges of the Court of Appeals of the District are not circuit judges within those provisions; conse-

quently the District Supreme Court had no jurisdiction to hear the present cause. The point is without merit.

Section 43, Title 18, District of Columbia Code, 1929, provides that the Supreme Court " shall possess the same powers and exercise the same jurisdiction as the district courts of the United States, and shall be deemed a court of the United States." *Federal Trade Commission* v. *Klesner,* 274 U. S. 145, 156, held that § 5, of the Federal Trade Commission Act, conferring jurisdiction on the Circuit Courts of Appeals to enforce, set aside, or modify orders of the Commission, should be construed as conferring like jurisdiction upon the Court of Appeals of the District of Columbia. " The parallelism between the Supreme Court of the District and the Court of Appeals of the District, on the one hand, and the district courts of the United States and the circuit courts of appeals, on the other, in the consideration and disposition of cases involving what among the States would be regarded as within federal jurisdiction, is complete." And see *Pitts* v. *Peake,* 50 F. (2d) 485.

Whether the Railway Company has corporate power to operate the proposed ferry is a question which cannot be considered in this proceeding. We think Congress never intended to impose upon the Interstate Commerce Commission the duty of determining matters of this nature before granting or withholding assent to the construction of an extension. *Cleveland, C., C. & St. L. Ry. Co.* v. *United States,* 275 U. S. 404, 414.

The right of appellant Ferry Company to institute and maintain this proceeding rests wholly upon the permission granted by paragraph 20, § 1. "Any party in interest " may institute a suit to enjoin proposed construction, operation, or abandonment of a carrier's line unless it has obtained a certificate of public convenience and necessity from the Interstate Commerce Commission. In

the absence of such certificate the doing of any of these things is declared to be unlawful—a crime subject to punishment by fine and imprisonment. And the permission is to apply to the court for an order to arrest the unlawful undertaking. The inhibition applies where there is no certificate in fact, or where the Commission lacked power to grant the outstanding one because of insufficient evidence to support its findings or other reason. An invalid certificate would leave the situation as though none had issued. *Chicago, R. I. & P. Ry. v. United States,* 274 U. S. 29.

Here, undoubtedly, the Commission had power to entertain and act upon the Railway's petition, also to grant the certificate of public convenience and necessity upon sufficient evidence. If the record discloses such evidence, the certificate is not a nullity and the Ferry Company has no right now to demand decision of any other question.

We think there was enough evidence—when material and conflicting we may not pass upon its weight—to support the Commission's conclusion. A large district on the Eastern Shore of Chesapeake Bay lacks adequate railroad connection with Washington and points beyond. The possibilities of the proposed ferry, operated as a part of the Railway's line, were disclosed and the Commission's conclusion that material advantages to the public would result from the additional facilities for interstate transportation is not without support.

The decree below is

*Affirmed.*

Mr. Justice Cardozo took no part in the consideration or decision of this case.