NATIONAL BROADCASTING CO., Inc., et al. v. UNITED STATES et al. (MUTUAL BROADCASTING SYSTEM, Inc., Intervener).

COLUMBIA BROADCASTING SYSTEM, Inc., v. UNITED STATES (FEDERAL COMMUNICATIONS COMMISSION et al., Interveners).

District Court, S. D. New York.

Feb. 20, 1942.

Supplemental Opinion March 2, 1942.

690

John T. Cahill, of New York City, for National Broadcasting Company.

Charles E. Hughes, Jr., of New York City, for Columbia Broadcasting System.

Telford Taylor and Thomas E. Harris, both of Washington, D. C., for the United States and the Commission.

Louis G. Caldwell, of Washington, D. C., for Mutual Broadcasting System, Inc., Intervener.

Before L. HAND, Circuit Judge, and GODDARD and BRIGHT, District Judges.

L. HAND, Circuit Judge.

These actions were brought to declare invalid and set aside certain regulations originally promulgated by the Federal Communications Commission on May 2, 1941, and amended on October 11, 1941; in their final form they appear at the end of this opinion. After the actions were filed the Commission, on October 31, 1941, promulgated a further regulation in the form of a "minute," also appearing at the end of the opinion. Preparatory to the issuance of the regulations the Commission had held hearings at which nearly 9,000 pages of testimony were taken; among others whom it had invited to attend, were the two plaintiff "networks," which accepted and took part by introducing extensive evidence. When the regulations appeared, the "networks" brought the two actions at bar under § 402(a) of Title 47, U.S.C.A. to set them aside as beyond the powers of the Commission and as arbitrary, unreasonable and without basis in the evidence. Upon the complaints so filed and voluminous affidavits they then moved for a preliminary injunction against their enforcement pendente lite. In the action brought by the National Broadcasting Company, two "affiliated stations" have joined as parties plaintiff and the United States and the Commission were originally joined as defendants; in the action brought by the Columbia Broadcasting System it alone is plaintiff and the United States is the only defendant, but the Commission later intervened. A third "network," the Mutual Broadcasting System, intervened as a defendant in both actions. The United States and the Commission have countered the plaintiffs' motions by motions, made before answer, to dismiss the complaints for lack of jurisdiction over the subject-matter under Rule 12(b) (1), and for summary judgment under Rule 56(b), 28 U.S.C.A. following section 723c. The Mutual Broadcasting System has answered and joined in the motions of the other defendants. All these motions having come on before Judge Goddard, he assembled a court composed of three judges, to whom the hearing was transferred in accordance with the Act of October 22, 1913, 38 St.L. 219, 28 U.S.C.A. § 47.

Since we are deciding that the District Court for the Southern District of New York has no jurisdiction over the subject-matter of the actions either as a court of three judges or of one, it will not be necessary to consider the merits; nevertheless we must say something about the background of the regulations in order to make our discussion intelligible. The business of broadcasting depends for its support principally, if not altogether, upon advertising. The broadcasting is done by "stations," each "station" selecting programs which it thinks will be popular, either spoken, sung or instrumentally performed in its own studio, or relayed to it by a "network" as will appear. Interjected among these programs, occur those fervid importunities of advertisers, upon the results of which the "station" must depend for its revenue. A single "station" dependent upon its own programs alone would be very expensive to operate, and its income would be small; especially if, as has become customary, it were to add to its advertising programs what are called "sustaining programs," which are not paid for, but which are

thought to give a general popularity to the "station." These circumstances have long since resulted in the creation of "networks" of the kind with which the actions at bar are concerned; that is to say, in a widespread system of contracts of a single company with separate "stations" scattered all over the Union and known as "affiliates." The plaintiffs, National Broadcasting Company and the Columbia Broadcasting System, are two such "networks;" they own and operate broadcasting "stations" of their own, but, although they depend in part upon these as outlets, their principal reliance is upon their "affiliates." They originate a great variety of programs —usually in a studio of one of their owned "stations"—which they transmit by telephone to the "affiliates" for broadcasting. The audience of such a "network" in this way becomes the aggregate of the audiences of its "affiliated stations," and this enables it to charge so much higher prices for advertising than the "affiliates" could charge alone, that both they and the "network" can divide the returns to their common advantage. There are four such national "networks," two owned by the National Broadcasting Company (one of which we are told it has disposed of since these actions were begun), another by the Columbia Broadcasting System, and the fourth by the Mutual Broadcasting System, which has intervened because it feels itself aggrieved by the practices against which the regulations in suit were directed.

Every broadcasting "station" must have a license and the Federal Communications Commission alone has power to grant, refuse, revoke, renew or modify licenses. The Commission also has "authority to make special regulations applicable to radio stations engaged in chain broadcasting." 47 U.S.C.A. § 303(i). By virtue of these powers it assumed to promulgate the regulations now challenged, all of which, it will be observed, are no more than declarations of the conditions upon which the Commission will in the future issue licenses to "stations." The defendants' motions to dismiss the complaints are based upon the theory that these regulations are not "orders" within the meaning of § 402 (a), and that therefore this court has no jurisdiction over them; indeed, that they are not "orders" of any sort, but merely announcements of the course which it will pursue in the future, whenever an "affiliated station" applies for a new license,

or for the renewal of an existing one. To this the "networks" reply that the regulations had an immediate effect; that they not only announced what would be the future practice of the Commission, but presently adjudicated the invalidity of the contracts between themselves and their "affiliates;" and that they have in fact already caused serious losses, because a number of "affiliates" have declared that they will be obliged to break their contracts when their licenses are renewed, and have thus made it impossible for the "networks" to accept large and valuable advertising contracts.

We do not think that we need commit ourselves generally as to what "orders" are reviewable under the Act of October 22, 1913 (38 St.L. 219) which § 402(a) of Title 47, U.S.C.A. incorporates by reference as the measure of our jurisdiction. So far as we have found, the Supreme Court has never declared that that statute authorizes review of any decision of an administrative tribunal which neither directs anyone to do anything, nor finally adjudicates a fact to exist upon which some right or duty immediately depends. We agree that it is no answer that the decision challenged is "legislative" in character, (Chicago Junction Case, 264 U. S. 258, 263, 44 S.Ct. 317, 68 L.Ed. 667), and, as we have just implied, it is enough if it authoritatively determines the existence of a fact that at once sets in execution some sanction, though the decision itself be not in form a command. United States v. Baltimore & Ohio Railroad, 293 U.S. 454, 55 S.Ct. 268, 79 L.Ed. 587; Powell v. United States, 300 U.S. 276, 57 S.Ct. 470, 81 L.Ed. 643; Rochester Telephone Corporation v. United States, 307 U. S. 125, 59 S.Ct. 754, 83 L.Ed. 1147; American Federation of Labor v. National Labor Relations Board, 308 U.S. 401, 408, 60 S.Ct. 300, 84 L.Ed. 347. (Colorado v. United States, 271 U.S. 153, 46 S.Ct. 452, 70 L. Ed. 878; Claiborne-Annapolis Ferry Co. v. United States, 285 U.S. 382, 52 S.Ct. 440, 76 L.Ed. 808; and United States v. Idaho, 298 U.S. 105, 56 S.Ct. 690, 80 L.Ed. 1070, though they are of the same kind, are scarcely controlling, because they turned upon § 1(20) of the Interstate Commerce Act, 49 U.S.C.A. § 1(20).) But decisions which are no more than announcements of future administrative action have never, so far as we can find, been treated as within this statute. That does not necessarily im-

ply that a person presently injured is without any remedy when the threatened action would be unlawful; the situation then may present all the elements upon which equity will intervene in ordinary course. Shields v. Utah Idaho Central Railroad Company, 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111. It may be that the plaintiffs at bar could bring such actions in equity; at least it does not appear that recourse to them is positively forbidden, as was for example the case in Venner v. Michigan Central, 271 U.S. 127, 46 S.Ct. 444, 70 L.Ed. 868. But even so they would not be the actions at bar, which can be brought only under the statute, since otherwise the United States cannot be sued, or the Commission sued in this district, assuming that it was in any event possible to join it at all. Such actions would have to depend jurisdictionally upon the same facts as any other action against a public officer who threatens to do an unlawful act.

We should therefore have a great deal of doubt whether the regulations could in any view be regarded as "orders" which we could review under the Act of October 22, 1913, 38 St.L. 219, if the case came to us under the statute in vacuo. It does not, because, although, as we have said, § 402(a) incorporates it by reference, those orders are excepted which are mentioned in the parenthesis: to wit, all orders "granting or refusing an application for a construction permit for a radio station, or for a radio station license, or for renewal of an existing radio station license, or for modification of an existing radio station license." Relief from such orders is provided in § 402(b), (c), (d), (e) and (f); it is by appeal to the Court of Appeals of the District of Columbia, and it is to be heard upon the record made at the hearing of an application by the Commission. The procedure upon such appeals is in substance the same as that which has now become standard for the review of the decisions of administrative tribunals in adversary proceedings. Consequently, if any of the "affiliates" of the plaintiff "networks" should hereafter apply for a renewal of their licenses; and if, as we assume it will, the Commission adheres to its regulations, the resulting modification of the license will be reviewable only in the Court of Appeals of the District and upon the record made at that hearing. We have seen, however, that the regulations are nothing more than a declaration—or if one chooses, a threat—by the Commission that it will impose those conditions upon any renewal of a license in the future. No change is made in the status of "affiliates" meanwhile; their existing contracts with the "networks" remain enforceable; nor has the Commission given any evidence of an intention to use them as the basis for a revocation of existing licenses under § 312(a). On the contrary, the "minute" we have mentioned commits it to a contrary course. Hence, if these actions well lie, the plaintiffs have succeeded in substituting a different court and a different procedure from that which Congress has prescribed for the trial of precisely the same issues. This is inexorably true because here the only question is whether the Commission has power to impose the conditions mentioned in the regulations when a "station" applies for renewal; exactly the question which will determine the actual renewal of a license. The prescribed procedure will therefore be disregarded only because the putative wrong is merely threatened, instead of being in the very act of commission. Whatever may ordinarily be the proper scope of the word "order" in the Act of October 22, 1913, 38 St.L. 219, it seems to us clear that Congress could not have intended such an anomalous result as will follow upon treating these particular regulations as such "orders."

To this the plaintiffs make two answers. First, they say that the threat itself has already caused them loss, as we have said. Possibly that might support an action to compel the Commission to raise the issues immediately, as by a revocation proceeding under § 312(a); even so, it should not substitute another court for the Commission and the Court of Appeals, certainly not this court in an action against the United States and the Commission. We need not decide the point, however, because the "minute" we have quoted offers equivalent relief without risk to any "station" which may challenge the regulations. Next, the plaintiffs say that they may not be able to raise the issue in a proceeding for the renewal of a license, because the "affiliated stations" may fear to incur the Commission's displeasure. As to the National Broadcasting Company this is plainly untrue because two of its "affiliates" have joined it as plaintiffs. As to the Columbia Broadcasting System, its complaint, read most favorably, does perhaps allege that none of its "affiliates" will challenge the regulations when their licenses expire; at any rate, to avoid any

doubts, we shall so assume, little as that seems likely to be the case. We may do so, because the issue is irrelevant anyway, for the plaintiff "networks" have an adequate remedy under § 402 itself. They allege—and there seems to be no question about it—that their interest will be adversely affected by the enforcement of the regulations; if so, they can appeal to the Court of Appeals of the District from any order imposing unlawful conditions upon an "affiliate's" license. § 402(b) (2). It is true that the section does not in terms provide that they shall also be heard in the proceeding before the Commission under § 309(a) for the "renewal or modification of a station license;" but the Commission has itself answered that objection by § 1.102 of its regulations which permits intervention. An unreasonable refusal of the privilege so offered would appear to be a good objection on appeal under § 402(b) (2); for it is not likely that the statute which grants an appeal to all interested parties, meant not to give them the opportunity to make a record on which they can succeed upon that appeal. At any rate until the Commission shows some disposition to deny them a fair hearing in a proceeding for renewal of an "affiliate's" license, we are not to assume that it will do so. And even if that should appear, the resulting right of action, if any, would not, as we have said, be in this court or against the United States. For the foregoing reasons the complaints will be dismissed for lack of jurisdiction over the subject-matter.

We do not understand that any findings of fact are proper under Rule 52 (a), 28 U.S.C.A. following section 723c, which provides for such findings only in "actions tried upon the facts without a jury." It is true that the plaintiffs have moved for a preliminary injunction, and that the rule also requires findings "in granting or refusing interlocutory injunctions"; but we are not "refusing" any injunction. Once the complaints are dismissed for lack of jurisdiction, the motions become moot and we shall not pass upon them at all. We are therefore entering judgment in each action without findings.

Complaints dismissed for lack of jurisdiction.

GODDARD, District Judge, concurs.

The Chain Broadcasting Regulations.

Sec. 3.101. Exclusive affiliation of station.—No license shall be granted to a standard broadcast station having any contract, arrangement, or understanding, express or implied, with a network organization under which the station is prevented or hindered from, or penalized for broadcasting the programs of any other network organization.

Sec. 3.102. Territorial exclusivity.—No license shall be granted to a standard broadcast station having any contract, arrangement, or understanding, express or implied, with a network organization which prevents or hinders another station serving substantially the same area from broadcasting the network's programs not taken by the former station, or which prevents or hinders another station serving a substantially different area from broadcasting any program of the network organization. This regulation shall not be construed to prohibit any contract, arrangement, or understanding between a station and a network organization pursuant to which the station is granted the first call in its primary service area upon the programs of the network organization.

Sec. 3.103. Term of affiliation.—No license shall be granted to a standard broadcast station having any contract, arrangement, or understanding, expressed or implied, with a network organization which provides, by original term, provisions for renewal, or otherwise for the affiliation of the station with the network organization for a period longer than two years: Provided, That a contract, arrangement, or understanding for a period up to two years, may be entered into within 120 days prior to the commencement of such period.

Sec. 3.104. Option time.—No license shall be granted to a standard broadcast station which options for network programs any time subject to call on less than 56 days' notice, or more time than a total of three hours within each of four segments of the broadcast day, as herein described. The broadcast day is divided into 4 segments, as follows: 8:00 a. m. to 1:00 p. m.; 1:00 p. m. to 6:00 p. m.; 6:00 p. m. to 11:00 p. m.;11:00 p. m. to 8:00 a. m. Such options may not be exclusive as against other network organizations and may not prevent or hinder the station from optioning or selling any or all of the time covered by the option, or other time, to other network organizations.

Sec. 3.105. Right to reject programs.— No license shall be granted to a standard broadcast station having any contract, arrangement, or understanding, express or implied, with a network organization which

(a), with respect to programs offered pursuant to an affiliation contract, prevents or hinders the station from rejecting or refusing network programs which the station reasonably believes to be unsatisfactory or unsuitable; or which (b), with respect to network programs so offered or already contracted for, prevents the station from rejecting or refusing any program which, in its opinion, is contrary to the public interest, or from substituting a program of outstanding local or national importance.

Sec. 3.106. Network ownership of stations.—No license shall be granted to a network organization, or to any person directly or indirectly controlled by or under common control with a network organization, for more than one standard broadcast station where one of the stations covers substantially the service area of the other station, or for any standard broadcast station in any locality where the existing standard broadcast stations are so few or of such unequal desirability (in terms of coverage, power, frequency, or other related matters) that competition would be substantially restrained by such licensing.

Sec. 3.107. Dual network operation.— No license shall be issued to a standard broadcast station affiliated with a network organization which maintains more than one network: Provided, That this regulation shall not be applicable if such networks are not operated simultaneously, or if there is no substantial overlap in the territory served by the group of stations comprising each such network.

Sec. 3.108.⁴ Control by networks of station rates.—No license shall be granted to a standard broadcast station having any contract, arrangement, or understanding, express or implied, with a network organization under which the station is prevented or hindered from, or penalized for, fixing or altering its rates for the sale of broadcast time for other than the network's programs.

The Minute of October 31, 1941.

Procedure in Docket No. 5060.

The Commission today adopted the following minute setting forth the procedure that it will follow in applying the policies announced in the Chain Broadcasting Regulations:

If a station wishes to contest the validity of the Chain Broadcasting Regulations adopted in Docket No. 5060, or the reasonableness of their application to the particular station, its license will be set for hearing. In order to insure that the station may remain on the air and be in no way injured by any such Commission proceeding and appeal to court from a decision in such proceeding, the Commission will grant such licensee a temporary extension of its license, with renewals from time to time until there has been a final determination of the issues raised at such hearing. In the event of such litigation, and if the validity of the application of the Chain Broadcasting Regulations to such licensee is sustained by the courts, the Commission will nevertheless grant a regular license to the licensee, otherwise entitled thereto, who has unsuccessfully litigated that issue, if the licensee thereupon conforms to the decision.

The supplementary decision and order in Docket No. 5060 indefinitely suspended Regulation 3.107, relating to the operation of more than one network by a single network organization. No similar suspension was made of that portion of Regulation 3.-106, relating to network operation of more than one standard broadcast station with substantially overlapping service areas. The Commission will postpone indefinitely any action to prevent such dual station operation if it is shown that the operation of two stations in any city is indispensable to the continued operation of two networks by a single network organization.

The adoption of the foregoing procedure is without prejudice to the rights of any person who may petition the Commission for modification or stay of the Chain Broadcasting Regulations.

BRIGHT, District Judge (dissenting).

As I read the opinion of my brothers, they would dismiss for want of jurisdiction because nothing reviewable has been done, and that even after a license is denied, the only review thereof would be by appeal to the Court of Appeals in the District of Columbia.

By Section 402(a) of the Communications Act of 1934, we have jurisdiction to enjoin, set aside, annul or suspend an order of the Commission, except where it grants or refuses an application for a construction permit, for the granting, renewal or modification of a station license, or suspending a radio operator's license. These excepted matters can be reviewed only by appeal to the Court of Appeals aforesaid. This order, in my opinion, does not come within any of the excepted provisions. No application has been or is here made for any such relief,

and the order sought to be reviewed does not arise out of any such application.

There is no question in my mind that the order sought to be reviewed is one which, under the terms of Section 402(a), we have jurisdiction to enjoin. It is designated by the defendants as a "commission order". It has the usual mandatory clauses found in orders. It was by its terms obviously entered after an investigation made upon the Commission's own motion to determine what special regulations applicable to radio stations engaged in chain or other broadcasting are required in the public interest, convenience or necessity. It promulgates certain regulations, an obvious and attempted exercise of the Commission's rule-making power. It is clearly an attempt to make rules because at the time there was nothing else before the Commission upon which it could or did act. All of these rules, or regulations as they are called in the order, relate only to standard broadcasting stations having contracts with a net work organization, except rule 3.106, which relates to a license to be granted to a net work organization having more than one station in a service area, and rule 3.107 which proscribes a broadcasting station affiliated with a net work maintaining more than one net work. These rules do not apply to stations not affiliated with any net work. They apply only to contractual relations with net works, and in addition, prohibit the ownership by a net work of more than one station in a specified service area and the ownership by any organization of more than one net work. The order fixes as immediately the time when it shall become effective. In other respects it has all the earmarks of a final order.

That it was intended to be final is further evidenced by the Commission's report. It finds that the public interest "requires" the application of the regulations to stations affiliated with regional as well as with national net works. It affirms its powers to do so under Section 303(i) of the Communications Act, and clearly reveals that it is exercising its rule-making power when it queries whether the Commission can formulate into "general rules and regulations" the principles which it *intends* to apply in passing on individual applications. That its action is final is further emphasized by the statement, "We believe that the announcement of the principles we intend to apply in exercising our licensing power will expedite business and further the ends of justice. * * * The regulations we are now adopting are nothing more than the expression of the general policy *we will apply* in exercising our licensing power. The formulation of a regulation in general terms is an important aid to *consistency and predictability* and does not prejudice any rights of the applicant."

That it is exercising this rule-making power is further emphasized by another statement in its report, that Section 303(i) gives the Commission specific power to make special regulations applying to radio stations engaged in chain broadcasting and that "no language could more clearly cover *what we are doing here.*"

What it has done emphasizes more the finality of its order, which is an affirmative direction that thereafter no standard broadcasting station shall contract in terms prohibited, and ultimately puts an end to service by net works under contracts now existing. In fact, I think that the regulations are intended to affect existing contracts for the effective date of the order is deferred until November 15th 1941 "with respect to existing contracts, arrangements or understandings". This certainly is not a statement that the regulations shall not apply to existing contracts; it is merely a postponement as to when the axe will fall.

The particular agreements prohibited are presently contained in most of the affiliation contracts of the two complaining net works. They state those provisions are essential to the proper and successful conduct of their business, and in deciding the question of jurisdiction, I believe we must assume this to be true. It is also shown by them, without contradiction, that between the time the regulations were promulgated and the commencement of these actions, not less than twenty-four broadcasting stations having affiliation contracts with N.B.C. have cancelled their contracts as a result of the order in question, and not less than twenty-four others having such contracts, have served notice that they do not intend to abide by the terms of such contracts unless they are conformed to the Commission's order. Similarly, it is shown by the affidavits submitted by C.B.S. that some of the stations affiliated with it are refusing to renew their affiliation contracts, some are threatening to cancel or repudiate them, and some have already cancelled on the ground that the rules in question prohibit them. There is thus a present injury.

It is suggested that the plaintiffs must wait until the Commission has ruled upon

the application of a broadcasting station for a renewal of its license. Can it be said that the Commission will change its rules, in view of the positive statement it has already made with reference thereto and above quoted? Must these net works await the idle ceremony of a denial of a license before any relief can be sought when it is perfectly obvious that no relief will be given? And what relief could they get if they did wait? The net works are not to be licensed, only the individual stations who make application. But it is said the net works could intervene and be heard. All that might be said or urged in their behalf has doubtless been communicated to the Commission in the three years between March 18, 1938 and May 2, 1941, when the investigation was going on. Must they march up the hill and down again, with the probability of being met with the statement that the Commission has given the matter due consideration and has done what it intends to abide by, as it has definitely said in its report? It is said, however, that by a minute adopted after these actions were brought, the Commission has manifested its intention to permit the net works to intervene and be heard upon the subject of the granting or denial of the license. That minute refers obviously only to a station, and insofar as it attempts to change the nature of the order sought to be reviewed or to obviate a review would be abortive. Southern Pacific Co. v. Interstate Commerce Commission, 219 U.S. 433–452, 31 S. Ct. 288, 55 L.Ed. 283; Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498–515, 31 S.Ct. 279, 55 L.Ed. 310.

This court has reviewed the rule-making power of this very Commission without being troubled by the question of jurisdiction. American T. & T. Co. v. United States, D. C., 14 F.Supp. 121, affirmed 299 U.S. 232, 57 S.Ct. 170, 81 L.Ed. 142 That there can be a review of an order exercising the delegated legislative function of rate-making and rule-making is admitted in United States v. Los Angeles & S. L. R. R., 273 U. S. 299, 309, 47 S.Ct. 413, 71 L.Ed. 651. In Interstate Commerce Commission v. Goodrich Transit Co., 224 U.S. 194, 32 S.Ct. 436, 56 L.Ed. 729, where bills were filed to enjoin orders prescribing methods of account, bookkeeping and reports, jurisdiction was not questioned in a court always jealous of its jurisdiction. In Kansas City Southern Railway v. United States, 231 U.S. 423, 34

S.Ct. 125, 58 L.Ed. 296, 52 L.R.A.,N.S., 1, jurisdiction was again assumed of a petition to declare invalid and to enjoin regulations relative to accounting. In Skinner & Eddy Corp. v. United States, 249 U.S. 557–562, 39 S.Ct. 375, 63 L.Ed. 772, which involved a refusal of a suspension of a tariff, jurisdiction was assailed, at least until after a further remedy was sought; and it was there stated that where contention was made that the Commission had exceeded its statutory powers, courts have jurisdiction of suits to enjoin even if the plaintiff had not attempted to secure redress before the Commission. In the Assigned Car Cases, 274 U. S. 564, 47 S.Ct. 727, 71 L.Ed. 1204, suits were brought to enjoin and annul an order which prescribed a rule governing the distribution of cars among coal mines after an investigation by the Interstate Commerce Commission of its own motion, and no question of right of review was raised. And in American Federation of Labor v. National Labor Relations Board, 308 U.S. 401, 408, 60 S.Ct. 300, 84 L.Ed. 347, it was admitted that administrative determinations which are not commands may for all practical purposes, determine rights as effectively as the judgment of a court and may be re-examined by courts under particular statutes providing for the review of orders. In Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468, suit was brought by a private school to restrain the enforcement of an Oregon statute which required primary education in public schools, and jurisdiction was sustained, Mr. Justice McReynolds writing that the suits were not premature, that the injury to the plaintiffs was present and very real and not a mere possibility in the remote future.

Supplemental Opinion.

PER CURIAM.

■ The Commission is of course right in saying that we have decided that the plaintiffs have adequate protection outside of these actions and in spite of their dismissal; nevertheless, in deciding whether a stay should be granted pending an appeal, we must assume that we may be mistaken, certainly a not unreasonable assumption in view of Judge BRIGHT'S dissent. If so, the plaintiffs will not be adequately protected, and indeed they may not be anyway if the Commission does not withhold enforcement in all cases until the issues could be once and for all determined in a

renewal proceeding. Considering on the one hand that if the regulations are enforced the networks will be obliged to revise their whole plan of operations to their great disadvantage, and on the other that the Commission itself gave no evidence before these actions were commenced that the proposed changes were of such immediately pressing importance that a further delay of two months will be a serious injury to the public, it seems to us that we should use our discretion in the plaintiffs' favor to stay enforcement of the regulations until they can argue their appeal. For these reasons we will grant such a stay until the argument of the appeal before the Supreme Court or the first day of May, 1942, whichever comes first. For any further stay the plaintiffs must apply to the Supreme Court itself, or to the Circuit Justice.