WISCONSIN COAL BUREAU, INC., and another, Respondents, vs. PUBLIC SERVICE COMMISSION, Appellant.

WISCONSIN RAILROAD ASSOCIATION, Respondent, vs. SAME, Appellant.

*December 7, 1943—January 18, 1944.*

436

For the appellant there were briefs by the *Attorney General* and *H. T. Ferguson,* assistant attorney general, and oral argument by *Mr. Ferguson.*

*A. R. McDonald* of Madison, and *Amos M. Mathews* of Chicago, Illinois, attorneys for the respondent Wisconsin Railroad Association, and *Philip H. Porter* of Madison, attorney for the respondent Wisconsin Coal Bureau, Inc., and others.

FRITZ, J.   The order, which plaintiffs seek to have vacated and set aside in these actions brought under sec. 196.41 (1), Stats., was made by the Public Service Commission (hereinafter called the "commission") on an application by the Wisconsin Southern Gas Company, under sec. 196.49, Stats., for a certificate of authority, to construct a pipe line to connect the applicant's facilities at Lake Geneva, Wisconsin, with the facilities of Natural Gas Pipe Line Company in Illinois, at or near the Illinois-Wisconsin state line; to construct terminal facilities at Lake Geneva; and to substitute natural gas for manufactured gas furnished by the applicant in its service to the public as a public utility operating in several municipalities in the southeastern section of Wisconsin.   Before the close

of the hearings on that application the plaintiffs in the actions at bar made a motion to dismiss the proceeding before the commission on the grounds that the Federal Natural Gas Act (15 USCA, secs. 717–717w) gives exclusive jurisdiction to the Federal Power Commission over the extension of such facilities as are proposed in the application herein; and also a second ground which has become immaterial.

The motion to dismiss was denied on the commission's conclusion that—

"The amendment of the Federal Natural Gas Act was not intended to and does not deprive this commission of any regulatory authority vested in it by the provisions of section 196.49, Statutes. Obviously the applicant in this proceeding cannot obtain its desired supply of natural gas from the Natural Gas Pipe Line Company unless and until that company shall have obtained such federal authority as may be necessary to enable it to furnish such supply of gas to the applicant. We think that full and complete recognition will be given to federal authority in the premises by attaching a condition to the certificate of authority herein granted providing that it shall not be effective unless and until Natural Gas Pipe Line Company shall be properly authorized to furnish applicant with the desired supply of natural gas."

Thereupon the commission found—

"1. That the construction and installation by the applicant of approximately 10 miles of . . . steel pipe line to connect its facilities at Lake Geneva with the facilities of Natural Gas Pipe Line . . . at or near the Illinois-Wisconsin state line at a point near Genoa City, Walworth county; together with terminal facilities in the city of Lake Geneva, Walworth county, at an estimated expense of $45,000 is required by public convenience and necessity; will not impair the efficiency of applicant's service; will not provide facilities in excess of probable future requirements; and will not add to the applicant's cost of rendering service without proportionately increasing the value and available quantity thereof.

"2. That a certificate authorizing such construction and installation should be issued subject to the conditions as therein set forth."

And therefore the commission certified—

"That Wisconsin Southern Gas Company be and is hereby authorized to construct" such "pipe line and the terminal facilities; . . . subject, however, .to the following conditions, compliance with each of which is required in order to make this certificate effective for any purpose: . . .

"3. That before commencing the construction of any property hereunder, applicant shall ascertain that Natural Gas Pipe Line Company of America is or has been authorized and permitted by proper agency of the government of the United States to furnish and supply applicant with sufficient quantities of natural gas, adequate to meet applicant's present and reasonably expected future requirements; and that applicant file with the commission evidence of such permission or authority, together with contracts entered into with said Natural Gas Pipe Line Company, which contract shall be subject to the approval of this commission."

In connection therewith the commission ordered—

"That upon the exercise of the authority granted in and by the foregoing certificate and compliance with the conditions thereof, or as may be hereafter prescribed, the applicant be and is hereby authorized to substitute natural gas for manufactured gas in the furnishing of its utility service; subject, however, to the proper and lawful regulation of the plaintiff as to standards and adequacy of service and the rates to be charged therefor. . . ."

In addition to alleging the above-stated matters in the complaints in the actions at bar, the Wisconsin Coal Bureau, Inc., and Wisconsin Upper Michigan Fuel Dealers Association allege in their complaint that their members are owners of coal docks, and dealers, handlers, or distributors of coal, some of

whom sell or distribute coal in the territory served by Wisconsin Southern Gas Company; that the substitution of natural for manufactured gas by that utility is a change which presents serious questions of the adequacy of the service furnished by it to its customers; that such change has serious results upon the economy of the area served by the utility by reason of effects upon the employment of labor, the disruption of established business, and the maintenance of transportation facilities, all of which involves a well-recognized question of grave public interest; and that plaintiffs "have a direct interest in such results upon the adequacy of resulting public-utility service and upon the social and economic effects as herein described." Likewise in the complaint of Wisconsin Railroad Association and E. H. Gervais, R. H. Cowan, H. Roy Johnson, and W. R. McCabe, there are additional allegations that the Wisconsin Railroad Association is an unincorporated association composed of ten different railroad corporations, or their trustees, operating in Wisconsin, which are also separate plaintiffs, and that each of the above-named individuals is an official or representative of an organization of railway employees who operate trains in Wisconsin; that plaintiffs have an interest in the order sought to be vacated in this action because "if natural gas is brought into, and sold to customers in, the places and areas now served by Wisconsin Southern Gas Company, such natural gas will directly replace coal, coke, fuel oils, liquefied petroleum gases, and other fuels which are now being used in said places and areas and which are now being carried into said places and areas by the aforesaid railroads; that said fuels which will be so replaced by natural gas constitute a very substantial part of the total freight traffic now being terminated and originated in said places and areas, and the revenue on said freight traffic accruing to the aforesaid railroad is substantial; and that loss of said fuel traffic by the railroads will result directly in loss of employment to the

plaintiffs and the classes of railroad employees described in this complaint. . . ."

In connection with those matters, it is further alleged by the plaintiffs that the commission's findings, certificate, and order are unlawful and void for the following reasons: That the subject matter thereof is vested wholly in the Federal Power Commission by the Natural Gas Act, as amended February 9, 1942 (15 USCA, secs. 717–717w), and thereby the defendant commission is divested of all jurisdiction over said subject matter, and its certificate and order are in violation of sec. 8, art. I, U. S. Const., and of the Wisconsin statutes; that said findings, certificate, and order authorize Wisconsin Southern Gas Company to construct the pipe line wholly within Wisconsin, from Lake Geneva to a point at or near the Wisconsin-Illinois state line, and authorize said company to use said pipe line for the transportation of natural gas in interstate commerce from Illinois and other states into Wisconsin; and said pipe line, when constructed, will be used throughout its entire length by said Wisconsin Southern Gas Company solely for the transportation of natural gas in interstate commerce as aforesaid from a point at or near said Wisconsin-Illinois state line to Lake Geneva; and that the defendant commission lacks jurisdiction to authorize said company or any other person to construct said pipe line, because the sole jurisdiction to authorize either the construction or operation thereof is vested exclusively in the Federal Power Commission by the Natural Gas Act (15 USCA, secs. 717–717w), and that the findings, certificate, and order are in violation of said act and of sec. 8 of art. I, U. S. Const., and Wisconsin constitution and statutes. The prayers in the complaints are for judgment "vacating and setting aside said findings, certificate and order of the said defendant commission."

In support of its demurrers on the ground that the complaints fail to state facts sufficient to constitute a cause of ac-

tion, the commission contends that the facts alleged are not sufficient to show that any of the plaintiffs have a legal interest in the matters determined by the order; and that therefore they have no right to maintain these actions. These contentions must be sustained.

In each of the cases at bar, as in *Wisconsin Hydro Electric Co. v. Public Service Comm. 234* Wis. 627, 634, 291 N. W. 784, the action is brought under sec. 196.41 (1), Stats., to have the court set aside an order made by the commission on an application which was made under sec. 196.49 (2), Stats., by an existing and operating public utility (Wisconsin Southern Gas Company) for an order to be made by the commission, in the exercise of its power and jurisdiction to supervise and regulate every such utility, to authorize the utility to construct an extension or addition to its existing plant and facilities. In the *Wisconsin Hydro Electric Co. Case, supra,* we concluded, after due consideration, that in order to maintain such an action brought under sec. 196.41 (1), Stats., it must appear from the allegations in the complaint that the plaintiff has a legal interest in the controversy; and that a remote financial stake therein is not sufficient. In thus concluding we said—

"It is considered that the trial court correctly held that the Wisconsin Hydro Electric Company had no interest which entitled it to maintain this action. While the statute provides that any public utility may bring an action, that must be understood to mean a public utility with an interest in the controversy. The Electric Company has no such interest. No doubt it has a remote financial stake in the controversy. If the city of Cumberland can be prevented from generating its own electrical energy it will be obliged to make a contract with the Electric Company, but the possibility or even the probability that the Electric Company would procure such a contract does not give it a legal interest in this controversy."

Consequently, we held that (as is stated in the syllabus 234 Wis. 627)—

"an electric company, merely by reason of the fact that it might be able to procure a contract to supply electrical energy to a city if an order of the commission authorizing the city to install its own generating plant should be determined to be invalid, was not entitled to maintain an action against the commission under sec. 196.41 to set aside such order."

Similar in effect are our decisions in *Milwaukee v. Public Service Comm., ante,* p. 73, 11 N. W. (2d) 643; *Milwaukee v. Public Service Comm.* 232 Wis. 397, 287 N. W. 682.

In the complaints now under consideration there are no allegations to show that the plaintiffs have any legal right cognizable by the courts of this state which would be in some way invaded or impaired by the utility's construction of the additional facilities authorized by the commission's order. There is nothing to show that the plaintiffs are legally entitled to require the utility to use only such fuels as the railroads can transport; and the possible consequence that the use of a commodity which they cannot transport may diminish the earnings of the railroads or their employees does not create any legal right in their behalf to prevent the use of such other commodity. Likewise no facts are alleged which can be held to show that the plaintiffs engaged in selling or handling coal have any legal right to prevent the utility from using, in lieu thereof, some other commodity which the plaintiffs are not equipped to handle. As the law does not afford any remedy to any of the plaintiffs for the loss of business or employment which may result if natural gas should be used by the utility, such "loss" is *damnum absque injuria.* Consequently, as their allegations fail to show that plaintiffs have some such legal interest in the controversy as is necessary to entitle a plaintiff to maintain an action under sec. 196.41 (1), Stats., the trial court should have sustained defendant's demurrers.

Even if, as plaintiffs contend, the commission were without authority to make the order in question, that could not operate to create such legal interest in the plaintiffs as is necessary to

enable them to bring these actions. There would still have to be allegations sufficient to show that plaintiffs actually have the legal interest necessary to entitle a plaintiff to maintain an action under sec. 196.41 (1), Stats. If there were such allegations it might be necessary to rule upon plaintiffs' contentions that jurisdiction to make an order to authorize the construction of a pipe line for the further transmission of natural gas, which has been transmitted in interstate commerce, is vested solely in the Federal Power Commission; and that therefore the defendant commission's order is void. It may be true that the order would be beyond the commission's jurisdiction if it had been an unconditional order and if it had been made for the purpose of authorizing the utility to construct a pipe line solely for the further interstate transmission of natural gas, instead of being, as it is, an order made by the commission in the exercise of the regulatory powers vested in it by sec. 196.49 (1), Stats., to control and authorize the construction of any addition to an existing plant of a Wisconsin utility when the commission finds that such addition is required by public convenience and necessity in order to furnish the necessary utility service. As plaintiffs contend, if the Wisconsin Southern Gas Company engages in the transportation or the sale of natural gas transported in interstate commerce, then it is to be considered a "natural gas company" under the definition of that term in sec. 2 (6), 15 USCA, sec. 717a of the Natural Gas Act; and as such a company it cannot engage in the transportation or sale of natural gas, or the construction of a pipe line for the transmission thereof, unless there is issued and in force with respect to it a certificate of public convenience and necessity, authorizing such acts or operations, which has been issued by the Federal Power Commission in the exercise of the jurisdiction vested solely in the latter commission by the provisions in sec. 7 (c), 15 USCA, sec. 717f (c). *Illinois Natural Gas Co. v. Central Illinois Public Service Co.* 314

U. S. 498, 62 Sup. Ct. 384, 86 L. Ed. 371; *East Ohio Gas Co. v. Tax Comm.* 283 U. S. 465, 51 Sup. Ct. 499, 75 L. Ed. 1171.

However, in making the order involved in the actions at bar, the commission confined the exercise of its jurisdiction and functions under sec. 196.49 (2), Stats., to solely the regulation of the Wisconsin Southern Gas Company as a public utility engaged as such in this state in transmitting and selling gas to its patrons, and not as a potential transportation agency. That is evident from the following facts: The commission's certificate and order are based on its findings that—

"the construction and installation by the applicant" of the additional pipe line "to connect its facilities at Lake Geneva with the facilities of Natural Gas Pipe Line Company of America at or near the Illinois-Wisconsin state line at a point near Genoa City, Walworth county; together with terminal facilities in the city of Lake Geneva, Walworth county, at an estimated expense of $45,000 is required by public convenience and necessity; will not impair the efficiency of applicant's service; will not provide facilities in excess of probable future requirements; and will not add to the applicant's cost of rendering service without proportionately increasing the value and available quantity thereof.

"That a certificate authorizing such construction and installation should be issued subject to the conditions as therein set forth."

In accordance with the latter finding, the commission, in the certificate issued by it, expressly made the authorization to construct the additional pipe line,—

"subject, however, to the following conditions, compliance with each of which is required in order to make this certificate effective for any purpose: . . .

"3. That before commencing the construction of any property hereunder, applicant shall ascertain that Natural Gas Pipe Line Company of America is or has been authorized and permitted by proper agency of the government of the United

States to furnish and supply applicant with sufficient quantities of natural gas, adequate to meet applicant's present and reasonably expected future requirements; and that applicant file with the commission evidence of such permission or authority, together with contracts entered into with said Natural Gas Pipe Line Company, which contract shall be subject to the approval of this commission."

Consequently, until there is compliance with the conditions thus prescribed, including the issuance by the Federal Power Commission of the certificate of public convenience and necessity required by sec. 7 (c), 15 USCA, sec. 717f (c), there cannot lawfully be commenced under the defendant commission's order any construction of the pipe line by the utility. On the other hand, in the event of an application to the Federal Power Commission for such a certificate by either the Natural Gas Pipe Line Company or the Wisconsin Southern Gas Company, plaintiffs may be permitted, as they contend, to intervene as parties protestants with full right of participation on the hearing before the Federal Power Commission and also the review by the federal courts of any order of that commission (sec. 7, 15 USCA, sec. 717f, as amended February 7, 1942, and sec. 19, 15 USCA, sec. 717r, Natural Gas Act); and on such hearings the plaintiffs, as such intervening protestants, may be permitted to present evidence as to the effect upon them of the loss of railroad traffic and coal consumption occasioned by the building of the proposed pipe line and use of natural gas. *Federal Communications Comm. v. National Broadcasting Co.* 319 U. S. 239, 63 Sup. Ct. 1035, 87 L. Ed. 1374; *Alton Railroad Co. v. United States,* 315 U. S. 15, 62 Sup. Ct. 432, 86 L. Ed. 586; *Claiborne-Annapolis Ferry Co. v. United States,* 285 U. S. 382, 52 Sup. Ct. 440, 76 L. Ed. 808.

In the event of such intervention and participation by plaintiffs in such proceedings before the federal commission or courts, neither the exercise of their jurisdiction nor the rights

of the parties entitled to participate in such proceedings or in any subsequent litigation in relation to matters involved on an application to the Federal Power Commission would be concluded by the defendant commission's order, which is involved in these actions. But, however that may be, it does not follow that because under those federal statutes and the authorized procedure thereunder, the plaintiffs may so participate in relation to such an application to the Federal Power Commission, they are to be considered to now have such a legal interest in the present controversy in the actions at bar as is necessary to entitle them to maintain these actions under sec. 196.41 (1), Stats. As we said in the *Wisconsin Hydro Electric Co. Case, supra* (pp. 632, 636), in relation to the proceeding authorized under that statute, "If this proceeding is in any sense an action it is one of limited and restricted scope and not an ordinary court proceeding. . . . But for the statutory provision for action to review he would not be entitled to have a court review. Having provided a special remedy the legislature may prescribe the conditions under which it may be pursued and the extent of the relief to be granted."

It follows that the court erred in overruling defendant's demurrers.

*By the Court.*—Orders reversed in each action; and causes remanded with directions to enter an order therein sustaining defendant's demurrer.