**VICTORY TRUCK LINE, Inc., et al. v. RED ARROW FREIGHT LINES, Inc., et al.**

No. 9489.

Court of Civil Appeals of Texas. Austin.
Feb. 7, 1945.

Rehearing Denied Feb. 28, 1945.

Birkhead, Beckmann, Stanard & Vance and Adrian A. Spears, all of San Antonio, for appellant Victory Truck Line, Inc.

Grover Sellers, Atty. Gen., and David W. Heath, Asst. Atty. Gen., for appellant Railroad Commission.

Rawlings, Sayers & Scurlock and Nelson Scurlock, all of Fort Worth, and Marshall O. Bell and Maynard F. Robinson, both of San Antonio, for appellees.

BAUGH, Justice.

Appeal is from a judgment of the trial court, upon a trial to the court without a jury, setting aside a certificate issued to the Victory Truck Line, Inc., on November 19, 1943, and enjoining any operations thereunder. This certificate was designated

as a "limited common carrier certificate" and authorized the Victory Truck Line:

"To Transport in the State of Texas; Goods, Merchandise, Arms, Ammunition, Supplies, and Equipment on government bill of lading only, from any stores, depots, warehouses, canteens, sites, and exchanges occupied by the War or Navy Departments of the United States to any point used or occupied by the United States Army or Navy, using all available highways.

"This Authority is granted only for the duration of World War II and six months thereafter, and the Commission retains jurisdiction in this cause with authority to enter further orders cancelling, suspending, or amending the authority herein granted when the conditions under which it was granted no longer justify the authority.

"This Certificate is limited strictly to the transportation of freight moving on government bill of lading to and from the points herein set out."

The Red Arrow Freight Lines, Inc., Brown Express, and Alamo Freight Lines, common carriers, and protestants before the Commission, attacked the order as void, among other things, for failure of the applicant and the Commission to comply with the provisions of paragraphs (c) and (d), § 5a of Art. 911b, Vernon's Annotated Civil Statutes; because based upon incompetent and improper evidence before the Commission; because the protestants were not given a proper hearing before the Commission; and because the findings of the Commission were not based upon substantial evidence presented to it. The trial court set aside the certificate, without prejudice to applicant to again present its application to the Commission. Findings of fact and conclusions of law were filed wherein the court concluded:

"1. That the Railroad Commission of Texas was without authority to grant a common carrier certificate of public convenience and necessity to defendant, Victory Truck Line, Inc., because it does not hold itself out to transport commodities for the public generally and indiscriminately; because there was no finding of public convenience and necessity based upon substantial evidence; because no application setting forth the facts required by statute had been filed with the Commission; because the Commission does not have authority to relinquish its supervision of the highways of the State of Texas by issuing a blanket certificate of public convenience

and necessity covering all of the public highways, but it must confine its consideration to designated highways for which a proposed schedule of service is offered between the several points or localities to be served, as described in the application under consideration.

"2. That the limited common carrier certificate of public convenience and necessity issued by the Railroad Commission of Texas, to the defendant, Victory Truck Line, Inc., is void because it was issued upon a showing only of the needs of the War and Navy Departments, and not upon a showing of the public convenience and necessity; because it was not supported by a proper application therefor containing the facts required by statute to be included in applications for such certificates; because the Commission does not have authority to issue a blanket certificate of public convenience and necessity covering all of the highways of the State of Texas."

3. That Victory Truck Line's application to the Commission was fatally defective for failure to comply with par. 4, § 10, Art. 911b, Vernon's Ann.Civ.St., in that it did not contain a proper map showing routes to be used, lines and services of competing carriers, inadequacy of their facilities and services, nor any proposed schedules to be followed by applicant between any designated points. The application merely presented a highway map of the State of Texas with the names of all transportation companies serving the State.

It is to be noted at the outset that neither the character of the service, nor the character of the order here involved, is specifically recognized nor provided for in the motor carrier law (Art. 911b, Vernon's Ann.Civ.St., as variously amended). In that law the Legislature obviously did not contemplate nor attempt to deal with emergency war time transportation. The motor carrier law relates only to peace time commerce over the highways wherein the interests, rights, and property of the civilian public, as distinguished from the naval and military need in war times, are involved. These various acts recognize, define, and regulate three specified classes of transportation over the highways, and prescribe the character of authority to be granted by the Railroad Commission to such carriers to conduct same. As to two of these,— "common carrier, motor carriers" and "specialized motor carriers,"—authority to operate for hire over the highways is evi-

denced by a "certificate" of public convenience and necessity, issued by the Commission upon applications made and hearings had as prescribed by law. Both of these are treated as "common carriers" and subject to regulation as such. Art. 911b, § 5a(c). The other class of motor carriers for hire over the highways is designated as "contract carriers", which includes all such carriers "other than as a common carrier" (Art. 911b, Sec. 1(h), Vernon's Ann.Civ.St.), and authority to conduct that character of service is evidenced by a "permit." The law nowhere provides for any "limited common carrier certificate" operation. However, the obvious purpose and intent of the motor carrier law is to place all carriage for hire over the highways, where the public interest is involved, under the supervision and regulation of the Railroad Commission, as indicated in the language of Sec. 4(d) of Art. 911b, as follows: "(d) The Commission is further authorized and empowered, and it shall be its duty, to supervise and regulate motor carriers in all matters whether specifically mentioned herein or not so as to carefully preserve, foster and regulate transportation and to relieve the existing and all future undue burdens on the highways arising by reason of the use of the highways by motor carriers, adjusting and administering its regulations in the interests of the public."

In doing so, regardless of the character of the common carrier business sought to be conducted over the highways, three controlling factors are prescribed by law for guidance of the Commission: (1) Whether there is a public need for such a service; (2) whether the highways sought to be used will, without undue injury thereto, bear the proposed traffic thereon; (3) whether the safety of the traveling public over such highways will permit the added use thereof for such purposes. And these guiding principles apply, in the main, regardless of the character of the use sought by such common carrier, or of the type or denomination of the license or permission to be issued by the Commission to such applicant. The rules, directions, limitations and requirements of the motor carrier law relating to common carrier applications made to the Commission, what they must contain, the hearings thereon, the proof to be adduced by such applicants, and the powers and duties of the Commission with regard to same, all are but steps in ascertaining and effectuating the indicated objectives.

■ However, as to contract carriers the requirements of the law are less comprehensive and less exacting. And when the Commission is confronted with an application for a type and character of use of the highways, not specifically covered by the motor carrier law, it should hear and determine same, as a practical matter, in keeping with the provisions, spirit, and purpose of the law, applicable to the most nearly related type and character of use of the highways which is covered by that law.

■ The nomenclature used by the Commission in designating the license or permission issued to applicant in the order attacked is not of controlling importance. Nor is the nomenclature used conclusive in determining the character of the license so granted. We are clear in the view that the needs and convenience of the shipping public in commerce over the highways, as those terms are used in the motor carrier law, are not here controlling. Applicant did not seek to serve such shipping public within the meaning of that law, but only to serve the United States Government in its expeditious conduct of the present war. The Victory Truck Line's original application was for a contract carrier permit. By amendment it redesignated it as a "limited common carrier" application, and asked for a common carrier hearing thereon, but in such amendment made no substantial change from the original so far as the character of service was concerned. That service or operation was applied for and granted wholly as an emergency service, and specifically limited both as to the commodities to be hauled and as to the shipper thereof.

While appellant did contemplate and declare its intention to use some special equipment in the service for which it sought to use the highways, the commodities which it proposed to transport are clearly not "special commodities" within the meaning of Secs. 5 and 5a of Art. 911b for which a special commodity permit is authorized. It is not necessary to enumerate here the special commodities covered by the statute; but obviously war supplies do not fall within that classification. The transportation here involved is more nearly analogous to that of a contract carrier, and the statutes and regulations relating to that character of transportation, by analogy, more nearly applicable; though apparently the parties, both appellants and

appellees, as did the trial court, have considered it as being in the nature of a special commodity service, and the applicant as a "specialized motor carrier."

 It is to be noted that two of the grounds of attack upon the Commission's order were that appellee protestants were not given a proper hearing before the Commission and that the evidence presented by applicant to the Commission was not sufficient to sustain the order. The trial court did not strike down the order on those grounds, however. So far as the hearing before the Commission was concerned the protestants were given notice of such hearing, and appeared before the examiner but offered no evidence; having elected not to do so on the ground that the applicant had not shown any right to such a permit or certificate. They were not, therefore, denied a hearing nor an opportunity to show the contrary. Upon the trial of the case they followed substantially the same course. The trial court, based upon evidence there introduced, found in its findings of fact that "Victory Truck Line, Inc., offered and introduced substantial evidence showing a need by the War and Navy Departments of the United States for its services within the State of Texas," of which finding no complaint is here made. Under the rule announced by the Supreme Court in Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022, and Cook Drilling Co. v. Gulf Oil Corporation, 139 Tex. 80, 161 S.W.2d 1035, and reiterated in Marrs v. Railroad Commission, Tex.Sup., 177 S.W.2d 941, that the facts existing at the time the order was entered, as shown by the evidence heard by the trial court, and not that heard by the Commission, are controlling; the findings of the trial court, not attacked, that the only service applied for was needed by the Government, forecloses those issues against the protestants, and they need not be further considered here.

 In so far as the trial court held the order void because the application and the evidence failed to show "public convenience and necessity" within the meaning and contemplation of those terms as used in the motor carrier law, we think it was clearly in error. No such common carrier service was applied for, none such attempted to be shown, and none such was granted by the order under attack. The applicant, as found by the trial court, did not hold itself out as, nor purport to be,

a common carrier for the public generally. While the applicant did not have a contract with the War and Navy Departments to haul only government owned war commodities to, from, and between United States Government installations in Texas, the service involved was, we think, more nearly analogous to that of a contract carrier than to that of a common carrier, specialized motor carrier, or special commodity carrier within the meaning of the motor carrier law; and in passing upon the application for such limited service the rules, regulations and requirements relating to contract carriers more nearly apply than those relating to other kinds of services covered by the statute. The validity of the order here involved should, in our opinion, be determined, therefore, in accordance with the rules and regulations applicable to contract carriers. For this reason the statutory requirements relating to common carriers over the highways and the cases cited involving certificates of convenience and necessity are, for the most part, not applicable. It is not amiss to here observe, however, that if the existence of need and convenience of the particular service here involved were necessary to be shown, we think that during the war time emergency, both the Commission and the courts could, as a matter of common knowledge, properly take judicial notice of the need for the prompt and expeditious movement of all war supplies; and that such transportation has, and is being uniformly given, priority over the movement in commerce of civilian freight, regardless of the convenience of the civilian shipping public.

 The portion of the motor carrier law relating to contract carriers is embraced in Sec. 6 of Art. 911b. The requirements of an application therefor are set forth in Sub. (b) of that section. Victory Truck Line's application shows a substantial compliance with the provisions of that section, unless it be with the provisions of Subsection (2) requiring that the application show, in addition to the territory to be covered, "the condition and character of the roads over which the transportation is to be performed." In the very nature of things such a showing for the entire State highway system would be impracticable. By virtue of its supervision over all motor transportation on all highways, in Texas and its numerous hearings with regard thereto, it must be presumed that the Commission is familiar generally

with the condition of such highways. Further, the law requires that the State Highway Commission be given notice of all hearings on such applications advising that Commission what highways are proposed to be used, what vehicles are to be operated thereon, and the character of freight to be transported over such highways; and also makes it the duty of the Highway Commission, where requested, to furnish to the Railroad Commission information as to the condition of such highways. Art. 911b, Secs. 11 and 12. Thus there is afforded an effective method of protecting such highways; and as to such contract carriers, the Railroad Commission having granted the permit, it will be presumed, absent any evidence to the contrary, that the Commission discharged the duties imposed upon it by law. At any rate, in their attack upon the order, the burden rested upon the appellees to prove the contrary. This they failed to do.

The same is true with reference to the provisions of Sub. (c) of Sec. 6 of Art. 911b, which provides that the Commission shall deny such application for a permit "if the Commission shall be of the opinion that the proposed operation of any such contract carrier will impair the efficient public service of any authorized common carrier or common carriers then adequately serving the same territory." If it be conceded that the proposed service is needed, that the highways are adequate to warrant such service, and that the applicant is capable of rendering it—as the finding of the court and the issuance of the order herein involved necessarily implies—then the burden rested upon the common carriers attacking the order to show the contrary. Here again the appellee protestants failed to discharge such burden.

It follows, therefore, from the conclusions above announced that the trial court erred in treating the order attacked as a certificate of public convenience and necessity under the motor carrier law; and in striking it down on the grounds that the requirements of the statutes relating to common carriers were not complied with. Regardless of the nomenclature used, we are of the opinion that order involved is more in the nature of a contract carrier permit; that the applicant substantially complied with the law relating to that type of service; and that the order of the Commission should be sustained.

We are not here concerned with the character of regulations imposed by the Commission on the applicant. Victory Truck Line is not complaining as to that. Whether such limitations and restrictions as to this particular permit are more onerous than those imposed upon contract carriers generally is not in issue. The very character of the service involved; the fact that it is emergently needed by the War and Navy Departments in the effective prosecution of the war; and that only military and naval supplies and material are to be hauled, constitute cogent reasons for a liberal construction of the statutes in support of the particular order under attack.

From what we have said it follows that the judgment of the trial court should be reversed, the injunction dissolved, and judgment here rendered holding the order of the Commission valid. It is so ordered.

Reversed and rendered.