**GROENDYKE TRANSPORT, INC., et al.,**
**Appellants,**

**v.**

**RAILROAD COMMISSION of Texas et al.,**
**Appellees.**

**No. 11582.**

Court of Civil Appeals of Texas.

Austin.

Feb. 28, 1968.

Rehearing Denied March 27, 1968.

Second Rehearing Denied April 17, 1968.

McGinnis, Lochridge, Kilgore, Byfield, Hunter & Wilson, Joe M. Kilgore, Austin, Blanchard, Clifford, Gilkerson & Smith, Thomas F. Sedberry, Lubbock, for appellants.

Crawford C. Martin, Atty. Gen., George M. Cowden, 1st Asst. Atty. Gen., A. J. Carubbi, Jr., Staff Legal Asst. Atty. Gen.,

R. L. Lattimore, Thomas Mack, Douglas H. Chilton, Asst. Attys. Gen., Austin, White, McElroy & White, W. D. White, Jr., Phinney, Hallman, Pulley & Livingstone, Leroy Hallman, Dallas, James, Robinson, Felts & Starnes, Phillip Robinson, Austin, for appellees.

HUGHES, Justice.

This suit is in the nature of an appeal under Art. 911b, Vernon's Ann.Tex.Civ.St., and was brought by Groendyke Transport Co., Inc., and Hearin-Miller Transporters, Inc., appellants,[1] against the Railroad Commission of Texas, Robertson Transport, Inc., Western Commercial Transport, Inc. and Smith Transit, Inc., appellees.

The purpose of appellants' suit was to set aside orders and certificates issued by the Railroad Commission to the other appellees authorizing them as specialized motor carriers to transport certain commodities in Texas, and for temporary injunctions enjoining such carriers from operating under such orders and certificates pending trial.

Appellees filed a plea in abatement to appellants' suit on the ground that appellants have no interest in the subject matter of the suit other than the interest of the general public and, hence, lack a justiciable interest required by law to attack or review such orders and certificates. This plea in abatement was sustained by the Trial Court and judgment was entered May 31, 1967, dismissing appellants' suit.

Since appellees have questioned our jurisdiction in this case on the ground that appellants did not file the record within the time prescribed, we will dispose of this question first.

On June 8, 1967, appellants filed a motion for new trial. This motion was not acted on by the Trial Court. The transcript and statement of facts were filed in this Court on September 21, 1967.

Appellees concede that if a motion for new trial was properly filed the appeal was timely.

■ Even though it may not have been necessary for appellants to file a motion for new trial in this case they had the privilege of filing one if they chose to do so and it was as effective to time appellate steps as a motion for new trial required to be filed in order to appeal. Park v. Essa Texas Corporation, 158 Tex. 269, 311 S.W. 2d 228. We find nothing in Alamo Express, Inc. v. Union City Transfer, 158 Tex. 234, 309 S.W.2d 815, cited by appellees to sustain their contention, inconsistent with Park v. Essa. We have jurisdiction of this appeal.

Sec. 20, Art. 911b, V.T.C.S., under which appellants filed their suit in the nature of appeal from certain orders of the Commission provides, in part:

"Sec. 20. If any motor carrier or other party at interest be dissatisfied with any decision, rate, charge, rule, order, act, or regulation adopted by the Commission, such dissatisfied person, association, corporation, or party after failing to get relief from the Commission may file a petition setting forth the particular objection to such decision, rate, charge, rule, order, act or regulations, or to either or all of them in the District Court in Travis County, Texas, against said Commission as defendant."

Rule 30 of the Rules of Procedure and Practice before the Railroad Commission of Texas, Motor Transportation Division, adopted by the Commission, provides:

"Rule 30: WHO MAY APPEAR: Any party at interest in a proceeding may appear in such proceeding. Any party at interest is any motor carrier operating over a route within the territory or serving any point proposed to

---

1. Steere Tank Lines, Inc., was a plaintiff in the Trial Court but has not appealed to this Court.

be served by any applicant, and transporting any of the same class or classes of commodities proposed to be transported by applicant."

With respect to Rule 30, the Commission says in part:

" * * * pursuant to its consistent practice under Rule 30 the Commission in accordance with what it deems to be its statutory mandate under Section 5a(d) (Art. 911b) has recognized as parties at interest in specialized motor carrier application proceedings only those 'existing' carriers then 'serving' the involved territory and with respect to which the statute requires a successful applicant to present substantial evidence, and requires the Commission to make detailed fact findings, showing inadequacy of such 'existing' carrier services and facilities. If, as appellants now contend, the statute or Constitution were construed to require the Commission to recognize as an 'interested party' any existing 'motor carrier' even though not authorized to perform and not performing any public service at issue in the particular proceeding, the orderliness of the Commission's formal hearing procedures and the effectiveness of its administration of certificate application proceedings under Motor Carrier Act would be subject to complete frustration."

Appellants, appellees and other specialized motor carriers filed applications with the Commission on the same day for authority to transport essentially the same commodities in the same areas.

Hearing on appellees' applications were set for August 16, 1965, prior to the date set for hearing the applications of appellants and other applicants. The applications of appellees were consolidated by Commission Examiner, William P. Danforth, for hearing on the date set. At such hearing appearances were made by appellants and other carriers, however the Examiner ruled that unless any of such carriers, including appellants, could show that they held specific authority to transport any of the commodities named in the applications before him, they could not actively participate in the hearing. When none of such protesting carriers could show that they held any such authority, the hearing was conducted on an uncontested basis to the exclusion of appellants and other protesting carriers. The applications of appellees were granted in July 1966, and it is the orders granting such applications which appellees sought to set aside by their suit in the court below.

This record shows that appellants requested the Commission to consolidate, for hearing, all applications, theirs, appellees and other carriers, for similar authority, which request was denied. This record also reflects that after hearing appellees' applications a hearing was held on appellants' applications in September and October 1965, and in September 1966 the application of Groendyke was granted [2] and the application of Hearin-Miller was denied because of the grant of authority to Groendyke and to two other carriers not parties to this suit.

The evidence is undisputed that appellants and appellees are all specialized motor carriers holding authority to transport certain commodities and classes of commodities to and from all points in Texas in intrastate commerce. Appellants and appellees hold certificates of necessity and convenience to transport many of the same commodities and are competitors for business located throughout the State. Further, the evidence indicates that for some time specialized motor carriers having the authority to transport petroleum or petroleum products have actually engaged in the transportation of fertilizers and fertilizer solutions as petroleum products

---

**2.** Groendyke has an appeal pending in this Court, our Cause No. 11,593, from a trial court judgment invalidating this grant of authority to it.

and that the Commission has been aware of this construction of the certificates and has taken no action to abate this practice.

We quote the following from appellants' brief:

"Because Appellants and Appellees were competitors in the transportation of many commodities covered by their certificates prior to any of the amendments involved in this litigation, they are interested parties in any order by the Commission which gives a competitive advantage to Appellees in attracting business of the various shippers throughout this state. For example, prior to the Commission's issuance of the orders in question, Appellants and Appellees competed for the business of shippers of fertilizers and fertilizer solutions on the basis of identical authority. By virtue of the present orders, Appellees now have the competitive advantage of offering a complete service in the shipment of fertilizers regardless of the chemical origin. It is obvious that a shipper will be more likely to call a specialized motor carrier with broad authority rather than make a determination as to the exact nature of the commodity he wishes to ship. Thus, a fertilizer manufacturer may well decide to call Robertson instead of Groendyke since he is aware that Groendyke may transport only commodities which are 'petroleum products' whereas Robertson has the broader authority. Thus, the Appellees have gained a competitive advantage by virtue of the Commission's illegal order."

Appellant's first point of error is that they are motor carriers or other parties at interest under Sec. 20 of Art. 911b and have a statutory right to maintain this suit.

In 2 Am.Jur.2d, Administrative Law, Sec. 559, it is stated:

"Where judicial review of administrative action is provided in the statute under which the administrative action is taken, the right of appeal to the courts is to be determined by looking at the statute, the valid regulations promulgated pursuant to it, and proven administrative practice throwing light upon their meaning."

The Commission is given the express authority " * * * to prescribe all rules and regulations necessary for the government of motor carriers * * *" Sec. 4, Art. 911b.

Rule 30 has been in effect in substantially the same form since 1946 and has consistently been enforced to disallow appearances by protesting specialized motor carriers who held no permanent certificated authority to perform any of the services proposed to be performed by an applicant.

We believe that this rule, sustained by long and uninterrupted practice of the Commission, is a valid rule and a reasonable administrative interpretation of Sec. 20 of Art. 911b giving the right of appeal to "any motor carrier or other party at interest." We cannot agree with appellants that Rule 30 is not related to Sec. 20 and pertains only to the right to appear. It would be indeed strange to hold that one could appeal from the result of a proceeding in which he had no right to appear.

In Mansfield Journal Co. v. Federal Communications Commission, 84 U.S.App. D.C. 341, 173 F.2d 646, in discussing the phrase "person aggrieved or whose interests are adversely affected" held that where there were three FM channels available for a particular city, the grant as to one channel did not give one of the other applicants the right of appeal, the court saying:

"The appellant contends it will suffer economic injury because under the order Richland, Inc., becomes the only FM broadcaster in Mansfield and 'will receive all of the commercial advantages accruing to the Station which first brings to its listeners this new and improved type of aural broadcasting.' It relies

upon Federal Communications Commission v. Sanders Brothers Radio Station, 1940, 309 U.S. 470, 642, 60 S.Ct. 693, 84 L.Ed. 869, 1037, as holding that a person who would suffer economic injury has an appealable interest under § 402(b) (2) of the Communications Act of 1934. As we read the Sanders case the Court held that economic loss to an existing station, without more, is not a valid reason for refusing a license to a new applicant, but that the existing station in such circumstances has the requisite standing to appeal and to raise any relevant question of law in respect of the order of the Commission. It is our view that to apply the Sanders case to the situation here would unduly extend it; for this appellant is not the owner of an existing station and does not hold a construction permit. It is merely an applicant for such a permit, which it may never obtain.

In these circumstances to hold that the appellant may appeal from the Richland, Inc., grant would amount to a holding that whenever two or more applications, not mutually exclusive, for similiar licenses in one locality are pending before the Commission, they must be acted on simultaneously so that no applicant may gain advantage by beginning operations before another. We are not prepared to announce such a ruling.

It follows from what has been said that the status of the Mansfield Journal Company is not such as to permit it to maintain this appeal."

There is no showing here that the grant of authority to appellees precludes the possibility of a grant of authority to appellants. In fact, this record discloses that authority has been granted by the Commission to one of appellants, Groendyke. Thus it appears that when the Commission granted the authority sought to appellees there was, at least in the mind of the Commission, economic reason for granting

similar authority to one of the other applicants, including appellant Groendyke.

It is obvious that if all carriers and all competing applicants for authority to perform services as carriers are considered to be parties at interest, the burden cast upon the Commission would be greatly increased.

Appellants cite City of San Antonio v. Texas Water Commission, 407 S.W.2d 752, (Tex.1966), State Banking Board v. McCulloch, Tex.Civ.App., 316 S.W.2d 259, writ ref., n. r. e., and Farb v. State Banking Board, Tex.Civ.App., 343 S.W.2d 508, writ ref., n. r. e., both by this Court, as sustaining their right of appeal.

In San Antonio the Court held that the City was both a "person affected" and a "party aggrieved" so as to give it a justiciable interest necessary for an appeal from an order of the Commission granting the application of Guadalupe-Blanco River Authority for water from the same source the City sought water, the Court saying:

"The Commission consolidated both applications for public hearing because GBRA and San Antonio were opposing each other's application and to a large degree the same considerations were applicable to both applications and a determination of the issues presented could only be made after a balancing of the benefits and detriments expected to result from granting or denying either or both applications. Obviously, the Commission's order granting GBRA's application to the extent of 50,000 acre-feet was based on a determination by the Commission that the benefits in granting San Antonio's application did not outweigh the detrimental results of diverting water out of the Guadalupe River watershed."

We do not consider this case in point. The Water Commission there was charged with the responsibility of weighing the two applications under statutory directions to

determine their respective merits. Each had a bearing on the other. Without simultaneous consideration of both applications this duty could not be discharged. Furthermore, there was no rule of the Water Commission there involved similar to Rule 30 now before us.

In the Farb and McCulloch cases, no question of justiciable interest was raised.

In McCulloch there were two applicants for a bank to be located in the same neighborhood. It was conceded that the volume of business would justify one bank. The Board granted one application and denied the other and an appeal to the courts was taken by the latter applicant from such order. Clearly he had the right to appeal from the order denying his application. This case would also fall under the rule of mutual exclusion in that the granting of one application foreclosed the grant of the other.

In Farb it "[was] agreed that two banks in the area are not justified." This case therefore clearly falls under the rule of mutual exclusion validating the right of appeal.

■ We conclude that under the facts of this case appellants had no standing to appeal from the orders and certificates of the Commission authorizing appellees to perform the services as carriers described therein.

Appellants' second point is that the Trial Court erred in dismissing their suit because as competing applicants for similar authority they wére entitled to a comparative hearing and consideration of their applications along with the applications of appellees. In effect, this point complains of the Commission's action in not holding a joint hearing to consider all of the applications for similar service authority.

In Alamo Express, Inc. v. Union City Transfer, 158 Tex. 324, 309 S.W.2d 815, the Court stated at page 821:

"An administrative agency has the sole discretion to determine whether or not it will consolidate into one hearing applications pending before it involving the same commodities, routes, parties, etc."

■ Should we concede that this language yields to the holding in Ashbacker Radio Corp. v. Federal Communications Commission, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945) that two applications for broadcasting permits for the same territory should be given concurrent consideration, it being found that the grant of one application would, because of interference, physically exclude the grant of the other, such decision would not apply here for the reason that it is not shown or found that the granting of appellees' applications physically or economically precludes the grant of appellants' applications. We overrule point 2.

Appellants' last point is that the Trial Court erred in excluding testimony or evidence, offered at the trial, showing harm to them as a result of the granting of appellees' applications by the Commission.

The testimony offered and excluded follows: On Bill of Exception, witness H. L. Rice testified that Steere Tank Lines and appellee Western-Commercial competed daily in West Texas, calling on the same shippers and to a great extent serving the same shippers; that for some time prior to the issuance of appellees' orders, Steere Tank Lines had been transporting fertilizer solutions for Phillips Petroleum, but that after Western-Commercial obtained authority to transport fertilizer and fertilizer blends specifically, Steere had lost freight revenues to Western-Commercial; that prior to the grant of expanded authority to appellees, all carriers were transporting these fertilizer solutions as petroleum products, but that since appellees have acquired authority to transport fertilizer solutions specifically, appellees will use this fact to contend that fertilizer solutions which all the carriers had pre-

viously been hauling as petroleum products can now be hauled only by carriers with the broader authority.

By the witnesses H. L. Rice and J. R. Evans, appellants also attempted to prove that the failure of the Commission to consolidate all the applications and the holding of a separate hearing in which appellants were not allowed to participate prejudiced appellants in the presentation of their applications at the later hearing. Mr. Rice, on Bill of Exceptions, testified that because the Commission held the hearing on appellees' applications a month prior to the hearing on appellants' application, Steere Tank Lines was unable to get some of its shipper witnesses to come back for appellants' later hearing; that many public witnesses who would have been available to support the application had it been heard at the time of appellees' hearing, could not return for appellants' hearing since this would require a second trip for the witnesses after the Commission split the hearings. Also, Mr. Evans testified that two public witnesses who had previously expressed their interest in supporting Hearing-Miller's application testified in support of appellees' application at the hearing in which appellants were not permitted to participate. Hearin-Miller was denied the right to cross-examine such witnesses, and the witnesses did not appear in the later hearing on Hearin-Miller's application.

Appellants sought to prove through an expert witness that certain commodities found by the Commission to be non-petroleum products in the orders under attack are in fact petroleum products which appellants are authorized to transport.

On Bill of Exception appellants' witness, Robert L. Greene, testified that nitrogen fertilizer solutions are derived from and are basically petroleum products and that there "is no nitric acid made in Texas other than that which comes from petroleum" and it is a petroleum product. Mr. Greene further testified that the finding

by the Commission contained in appellees' orders that nitric acid is not a petroleum product is erroneous.

Since we have held that appellants have no standing to appeal from the orders of the Commission granting appellees' certificates of authority, it follows that the order of the Trial Court sustaining appellees' plea in abatement and dismissing appellants' suit was proper, from which holding it is an ensuing conclusion that such proffered testimony was, as the Trial Court held, immaterial and inadmissible.

Finding no error, we affirm the judgment of the Trial Court.

Affirmed.

## ON MOTION FOR REHEARING

Appellants have forcefully argued that this case is controlled by the established principle that competing similar applications should be given a joint comparative hearing when because of economic or physical reasons all applications cannot be granted. Supporting this argument, appellants direct our attention to Cause No. 11,593, on the docket of this Court wherein appellees herein and others make the contention that the authority granted Groendyke, as described herein, was improperly granted because the previously granted authority to appellees destroyed any public necessity for the grant of additional authority.

It is a sufficient answer to this argument that Cause No. 11,593, has not been determined by us.

We wish to point out, however, that this issue of the necessity of a comparative hearing before the Commission on the basis that the applications before the Commission for identical service were mutually exclusive was never presented to the Commission. We have carefully read the motions to consolidate filed by appellants before the Commission and we do not find that they are grounded on this theory. Neither do we find that when the Examiner

denied appellants the right to participate in the hearing on appellees' applications that this theory was advanced or such contention made.

■ We agree with the Court in Delta Air Lines v. Civil Aeronautics Board, 97 U. S.App.D.C. 46, 228 F.2d 17, that when a nonfrivolous allegation of mutual exclusivity of applications is before the Commission, that the Commission should decide this issue and, if sustained, grant a full joint and comparative hearing as therein defined.

■ We do not believe that error can be predicated on appeal on this issue of mutual exclusivity of applications when the issue was not presented to the Commission.

The Motion is overruled.